UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DORA ANN MAYFIELD,

                    Plaintiff,

     -against-

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

                    Defendant.
--------------------------------------------------------X
FEUERSTEIN, J.

**FILED**
**CLERK**

9/30/2015 2:30 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**ORDER**
13-CV-6443 (SJF)

       Plaintiff Dora Ann Mayfield ("Mayfield" or "Plaintiff") commenced this action pursuant

to 42 U.S.C. § 405(g), seeking judicial review of the final determination of defendant

Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying

Plaintiff's application for social security disability benefits.  Now before the Court are the

parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules

of Civil Procedure.  For the reasons that follow, the Commissioner's motion for judgment on the

pleadings is granted, and Plaintiff's cross-motion is denied.  The Commissioner's decision

denying social security disability insurance benefits to Plaintiff is affirmed.


## TABLE OF CONTENTS

I.     **BACKGROUND** ................................................................................................2
     *A.*     ***Procedural History*** .............................................................................2
     *B.*     ***Non-Medical Evidence*** ........................................................................3
     *C.*     ***Medical Evidence*** ..............................................................................4
           1.     Veterans Affairs Medical Center ...............................................4
           2.     Dr. Toula Georgiou, Consultative Examiner ............................12
           3.     Dr. Evelyn Wolf, Consultative Examiner .................................14
           4.     Dr. Suzanne Krishnamoorthy, D.O..........................................15
     *D.*     ***The ALJ's Decision*** ..........................................................................16

II.    DISCUSSION ................................................................................................18
       A.    *Standards of Review* ........................................................................18
             1.    Rule 12(c) ..................................................................................18
             2.    Review of the Commissioner's Decision ..................................19
       B.    *Evaluation of Disability* ....................................................................20
             1.    Statutory Definition of Disability ............................................20
             2.    Five-Step Sequential Analysis of Whether Claimant is Disabled ...........21
       C.    *Review of the ALJ's Decision* ...........................................................23
             1.    Plaintiff's Work History ..........................................................24
             2.    Absence of Expert Medical Testimony on PTSD ....................24
             3.    Dr. Krishnamoorthy's Opinion ................................................25
             4.    Dr. Georgiou's Opinion ..........................................................27
             5.    Plaintiff's Service-Related Disability by the VA ....................28

III.   CONCLUSION ..............................................................................................29

I.     **BACKGROUND**

       A.    ***Procedural History***

On March 11, 2011, Plaintiff applied for social security disability insurance benefits, claiming she was unable to work due to several disabling conditions.  [Dkt. No. 17, Transcript of Administrative Record ("Tr."), at 121].  The Social Security Administration denied her claim on June 30, 2011.  *Id.* at 77.  Plaintiff, represented by counsel, then appealed to an administrative law judge ("ALJ"), who held a hearing on Plaintiff's claims on May 15, 2012.  *Id.* at 53.  On May 18, 2012, ALJ Bruce MacDougall decided that Plaintiff was "not disabled" under Sections 216(i) and 223(d) of the Social Security Act (the "Act").  *Id.* at 23.  This decision became the final decision of the Commissioner on September 26, 2013, when the Appeals Council denied Plaintiff's request for a review of the ALJ's decision.  *Id.* at 5.

On November 20, 2013, Plaintiff filed a complaint in this Court, seeking this Court's review of the Commissioner's decision.  [Dkt. No. 1, Compl.].  The Commissioner answered on

March 3, 2014.  [Dkt. No. 6, Ans.].  On July 2, 2014, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("F.R.C.P.") (the "Rule 12(c) Motion").  [Dkt. No. 12, Ltr. to Pl. Enclosing Notice of Mot.].  On July 29, 2014, Plaintiff cross-moved for judgment on the pleadings (the "Rule 12(c) Cross-Motion").  [Dkt. No. 13, Br.].  On September 4, 2014, the Commissioner filed a reply in support of its Rule 12(c) Motion and response in opposition to Plaintiff's Rule 12(c) Cross-Motion.  [Dkt. No. 16, Reply].  Now before the Court are Defendant's Rule 12(c) Motion and Plaintiff's Rule 12(c) Cross-Motion.

### B.      Non-Medical Evidence

Mayfield was born on September 9, 1973 and resides in Garden City, New York.  *Id.* at 29, 34.  As a child, she survived "sexual trauma" and completed high school, her highest level of education.  *Id.* at 160, 523.  In 1997, Plaintiff worked as a licensed nurse for approximately a year and a half.  *Id.* at 57.  She then worked in information technology support for six (6) months before working as a truck driver in the U.S. Army from 2000 to 2005.  *Id.* at 57, 176.  While in the Army, she was deployed to Iraq and Kuwait and survived "sexual trauma."  *Id.* at 14.  She was honorably discharged in 2005.  *Id.* at 814.  After she was discharged, Plaintiff restocked shelves for Target and Wal-Mart, but was sexually harassed by another Wal-Mart employee and consequently quit her job.  *Id.* at 58, 537.  She also worked "like an intern" at a shoe store for six (6) months.  *Id.* at 58.  Plaintiff next worked as a seasonal store clerk and did maintenance work for the City of Long Beach in August 2010.  *Id.* at 59.  She was, however, "attacked" at her "last

job"—although it is unclear which job she was referring to in her testimony before the ALJ—and has not worked since the alleged onset date of her disability on July 1, 2010. *Id.* at 25, 59-60.

Plaintiff now lives with her children, ages seven (7) and fifteen (15). *Id.* at 64. In a March 25, 2011 disability report, Plaintiff reported that she helped her children get ready for school and helped them with homework as part of her daily life. *Id.* at 165-75. She cooked daily, but needed assistance with cleaning and doing the laundry. *Id.* at 167-68. She took public transportation to do her shopping and because she was afraid to go out alone. *Id.* at 168. She believed that her mental health was improving with psychiatric treatment, because she did not used to go outside in the past. *Id.* at 67. Plaintiff had a driver's license and also drove. *Id.* at 169. She paid bills, counted change, and maintained a savings account. *Id.* She said that her hobbies included reading. *Id.* She stated that she had problems getting along with others, but that she also spent time with others for shopping and conversation. *Id.* at 170. She reported feeling mistreated by people in authority. *Id.* at 172. She believed that stress and fear prevented her from working. *Id.* at 67.

### C. Medical Evidence

#### 1. Veterans Affairs Medical Center

Plaintiff has reported several medical complaints including, but not limited to, post-traumatic stress disorder ("PTSD") and depression to the Northport Veterans Affairs Medical Center. She has eighty percent (80%) service-related disability for PTSD and an application pending for one hundred percent (100%) service-related disability with the Veterans Administration ("VA"). *Id.* at 67.

On February 11, 2011, Plaintiff had an appointment at the psychiatry department of the Northport Veterans Affairs Medical Center. *Id.* at 266-69. The medical examination found that Plaintiff's motor activity was retarded, and that she had a depressed mood, blunted affect, and impaired concentration. *Id.* at 267. She had an average estimated IQ, normal attention, normal memory, and normal thought processes, and displayed fair judgment, fair impulse control, and good insight. *Id.* at 268. She said that if someone tried to hurt her, then she would hurt another in self-defense, but that she did not have any homicidal ideation. *Id.* Plaintiff was diagnosed with PTSD and depression, and Effexor was prescribed. *Id.* She was also assessed with a global assessment of functioning ("GAF")[1] score of 50. *Id.*

On February 22, 2011, Plaintiff met with a social worker. *Id.* at 238. In her psychosocial history assessment, Plaintiff reported sharing an apartment with her children and being "disabled/unemployed" since 2009. *Id.* at 242. She indicated that she had been separated from her husband for two (2) years and had had a history of emotional, physical, and sexual abuse. *Id.* at 243. Plaintiff also reported an eighty percent (80%) "service connected disability" due to migraines, anemia, back strain, scars, asthma, PTSD, hypertensive vascular disease, and valvular heart disease. *Id.* at 244.

On March 1, 2011, Plaintiff met with a nurse practitioner to whom Plaintiff reported having had asthma since 2011 and using an inhaler, but not having any asthma symptoms at her

---

[1] The GAF test considers a patient's psychological, social, and occupational functioning at the time of the assessment. A GAF score between 61 and 70 equates to "mild" symptoms or difficulty in "social, occupational, or school functioning," with an ability to conduct meaningful interpersonal relationships. A GAF score between 51 and 60 equates to "moderate" symptoms or difficulty in "social, occupational, or school functioning." A GAF score between 41 and 50 equates to "serious" symptoms or difficulty in "social, occupational, or school functioning." Def.'s Mem. of Law in Support of Def.'s Mot. for J. on the Pleadings at 4 nn.1-2, 6 n.3 (*quoting* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000)).

appointment.  *Id.* at 231.  She further reported that she had had congestive heart failure in 2004.

*Id.* at 233.  During her examination, Plaintiff denied having any chest pains or palpitations, and

had no murmurs, rubs, heave, or gallops.  *Id.* at 235.  She also displayed normal gait, and a chest

x-ray revealed no active cardiopulmonary disease.  *Id.*

On March 14, 2011, Plaintiff had a psychiatric screening.  *Id.* at 214.  She reported no

suicidal ideation and denied suffering from any severe emotional distress, severe anxiety, or

panic symptoms, but complained of physical pain and insomnia.  *Id.* at 215.  She reported

sleeping for four (4) hours a night and waking in the middle of the night with shortness of breath

and a racing heart.  *Id.* at 219.  Plaintiff further revealed that she had a history of trauma and

domestic violence.  *Id.* at 216.  She reported that she had been raped at age 13 and had been

assaulted by a male service member while she was serving in the military.  *Id.* at 220.  Plaintiff

indicated that she had served in a combat zone in Iraq, where she had been exposed to direct fire.

*Id.*  She planned to obtain stable housing, attend counseling, and return to school.  *Id.* at 217.

She presented as alert and oriented times three, and she appeared engaged and motivated towards

treatment.  *Id.* at 218.  She also identified several self-directed goals.  *Id.*  She had a neutral mood

and appropriate affect, although she was also anxious.  *Id.* at 222, 227.  Plaintiff stated that her

mood had been variable, and she requested to speak to a doctor about her medications.  *Id.* at

228.  She stated that her medications were somewhat helpful with no side effects.  *Id.*  She

displayed an average estimated IQ, normal attention, normal concentration, and normal memory.

*Id.* at 222.  She also had good insight, judgment, and impulse control.  *Id.* at 223.  She was

diagnosed with PTSD and Cluster B personality traits and assessed a GAF score of 55.  *Id.*

On March 15, 2011, Plaintiff had an echocardiogram that was normal except for trace amounts of aortic regurgitation. *Id.* at 285, 583.

On April 4, 2011, Plaintiff returned to see a social worker. *Id.* at 582. She presented as teary when discussing her current living arrangements, although she was oriented times three and had a full range of affect that remained somewhat flat. *Id.* She attended and actively participated in group therapy on several occasions between April and June 2011. *Id.* at 756.

On April 19, 2011, Plaintiff had another psychiatric appointment. *Id.* at 764. She was fully oriented with depressed mood and blunted affect. *Id.* at 766. Her attention, memory, and thought processes were normal, but her concentration was impaired. *Id.* at 766-67. She also exhibited fair judgment, fair impulse control, and good insight. *Id.* Plaintiff was diagnosed with PTSD and depression, and a GAF score of 50 was assessed. *Id.* at 768.

On June 10, 2011, Plaintiff's treatment plan indicated that her strengths were her awareness of her illness, her expressed desire to change, a good use of treatment in the past, her interest in vocational development, her supportive family, and her recreational interests. *Id.* at 749-50. Her limitations included financial debts and medical problems. *Id.* at 751. She also actively participated in group therapy on June 14, 15, and 16, 2011. *Id.* at 748.

On June 20, 2011, Plaintiff had a physical exam. *Id.* at 746. Her lungs were clear, and a cardiac exam revealed no gallops. *Id.* Plaintiff also had no asthma symptoms. *Id.*

On June 28, 2011, Plaintiff went to the emergency room complaining of back pain. *Id.* at 739. She was prescribed Toradol. *Id.* at 740. She later returned to the emergency room on July 11, 2011 complaining of a headache, eye pain, and back pain. *Id.* at 733. A lab report indicated

a urinary tract infection.  *Id.* at 736.  Her condition improved, and she was later discharged the same day.  *Id.* at 737.

On July 26, 2011, Plaintiff had a chest x-ray after complaining of pain for three weeks after lifting heavy furniture.  *Id.* at 692.  There was no active cardio-pleuro-pulmonary process and no obvious acute fracture.  *Id.* at 693.  During her physical examination, Plaintiff had no chest pain, and her back was non-tender to percussion.  *Id.* at 720, 723.  On the same day, Plaintiff also had a mental status examination.  *Id.* at 724.  She had a depressed mood and blunted affect.  *Id.*  She was fully oriented with normal attention and impaired concentration.  *Id.*  She displayed normal memory and thought processes and had fair judgment, fair impulse control, and good insight.  *Id.* at 724-25.  She reported that she was not taking her medications regularly, because she recently felt fatigued and sick to her stomach.  *Id.* at 725.

On July 26, 2011 and August 2, 3, and 5, 2011, Plaintiff attended group therapy in which she was an active participant and displayed unremarkable behavior.  *Id.* at 719.

On August 8, 2011, Plaintiff met with a social worker.  She was oriented times three and in a good mood.  *Id.*

On August 15, 16, and 19, 2011, Plaintiff again attended group therapy, where she actively participated and exhibited unremarkable behavior.  *Id.* at 713.

On August 16, 2011, an x-ray taken of Plaintiff's lumbar spine revealed a mild levoscoliosis of the lumbar spine, mild irregularity of endplates in the lower thoracic spine that suggested early degenerative disc disease, a mild facet hypertrophy in the lower lumbar spine, and a mild retrolisthesis at the L2-L3 level.  *Id.* at 691.

On August 19, 2011, Plaintiff met with her social worker and discussed going to group therapy four days per week. *Id.* at 712.

On August 22, 2011, Plaintiff again met with a social worker. *Id.* at 711. She exhibited no evidence of suicidal or homicidal ideation. *Id.*

On September 2, 2011, a social worker's comprehensive progress report noted that Plaintiff had PTSD, familial discord, a lack of suitable housing, a minimal social network, a GAF score of 55, and had made minimal to no improvement. *Id.* at 708-09.

On September 28, October 4 and 5, 2011, Plaintiff attended group therapy and was an active participant with unremarkable behavior. *Id.* at 705.

On October 12, 2011, Plaintiff attended an outpatient psychology appointment where she indicated difficulty attending the program on a consistent basis due to transportation and child-care issues. *Id.* at 704.

On October 17, 2011, Plaintiff attended a mental health diagnostic study. *Id.* at 703. Her severe symptoms were crying, feelings of punishment, fatigue, loss of interest in sex, and changes in her sleeping pattern. *Id.*

On November 7, 2011, Plaintiff went to the emergency room complaining of left-sided pain after being hit by a car while crossing the street the week before the visit. *Id.* at 886. Plaintiff's left shoulder, hip, knee, and ankle showed no swelling or bruising. *Id.* at 887. She had full range of motion in her joints and was prescribed Motrin. *Id.*

On November 8, 15, and 19, 2011, Plaintiff was an active participant in group therapy. *Id.* at 883.

On November 28, 2011, Plaintiff was diagnosed with chronic back problems and advised to continue taking Tramadol. *Id.* She also visited a social worker that day, where she reported feeling better and calmer by the end of the session. *Id.* at 880. The social worker noted that Plaintiff was more relaxed than she had been previously and that she was able to use appropriate humor. *Id.*

On November 29, 2011, Plaintiff again actively participated in group therapy. *Id.* at 879.

On December 9, 2011, Plaintiff visited Dr. Diane Wagner, where Plaintiff was reported to be fully oriented with a depressed mood and blunted affect. *Id.* at 875. She had impaired concentration, normal attention, normal memory, and normal thought processes. *Id.* She also displayed good insight, judgment, and impulse control. *Id.* at 876. Dr. Wagner diagnosed Plaintiff with a GAF score of 50. *Id.*

On December 14, 2011, Plaintiff went to the emergency room complaining of intermittent chest pressure and shortness of breath. *Id.* at 868. She had no wheezing and no heart murmur. *Id.* at 869. She was diagnosed with an upper respiratory infection, given Zithromax, and discharged. *Id.* at 870.

On December 15, 2011, Plaintiff claimed that she had been hit by a car traveling at a slow rate of speed in early November and that she was experiencing pain. *Id.* at 865. Plaintiff was advised to go to physical therapy for her back pain. *Id.* at 867.

On December 19, 2011, Plaintiff met her social worker and reported feeling increasingly stressed due to the holidays and that the frequency of her nightmares had increased. *Id.* at 864.

On December 27, 2011 and January 9, 10, and 11, 2012, Plaintiff actively participated in group therapy. *Id.* at 859.

On January 13, 2012, Plaintiff had a physical therapy examination at which she reported pain in her lower back at a level of ten (10) out of ten (10), with her symptoms increased by sleeping, walking for more than 20 minutes, and changes in the weather. *Id.* at 854-55. She had walked to the clinic for her physical therapy exam. *Id.* She had a mild to moderate loss of range of motion in her lumbosacral spine. *Id.* A straight leg raising test was negative, and she reported that her pain had decreased to seven (7) out of ten (10) by the end of the appointment. *Id.* at 854-55, 857.

On January 24, 27, and 30, 2012, Plaintiff actively participated in group therapy. *Id.* at 845.

On February 3, 2012, Plaintiff attended physical therapy. *Id.* at 841. She reported that she had not felt any pain since her January 13, 2012 evaluation. *Id.* at 842. At physical therapy a week later, however, Plaintiff complained of back pain at a level of four (4) out of ten (10) in the upper back, but no pain in her lower back. *Id.* at 839. Her symptoms were noted as significantly improving. *Id.*

Also on February 3, 2012, Plaintiff visited her psychiatrist. *Id.* at 842. During her mental status examination, she was fully oriented, but had a depressed mood and blunted affect. *Id.* at 843. Her memory, attention, and thought processes were all normal, but her concentration was impaired. *Id.* She had good insight, judgment, and impulse control. *Id.* at 844. She was again diagnosed with PTSD and depression, and Dr. Wagner again assessed Plaintiff with a GAF score of 50. *Id.* at 845.

On February 13, 2012, Plaintiff had another appointment with her social worker. *Id.* at 835. She reported wanting to restart individual psychotherapy sessions on a weekly basis. *Id.* at

836.  She actively participated in her group therapy session on February 15, 2012.  *Id.* at 835.

On February 17, 2012, Plaintiff arrived late to her group therapy session and stayed for only a

few minutes without explanation.  *Id.*  She actively participated in her February 22, 24, and 28,

2012 therapy sessions.  *Id.* at 831.

On March 7, 2012, Plaintiff met with her social worker.  *Id.* at 829.  She appeared stable,

focused, and engaged and was compliant with her medication.  *Id.* at 830.  The social worker

encouraged Plaintiff to set up an appointment for regular appointments with a primary

psychiatrist.  *Id.*

On March 12 and 14, 2012, Plaintiff attended group therapy, where she was an active

participant.  *Id.* at 828.  On March 16, 2012, Plaintiff reported that she sometimes missed

scheduled appointments due to a lack of child care and other times due to her not wanting to go

to the appointment.  *Id.* at 826.

On March 28, 2012, Plaintiff attended individual therapy.  *Id.* at 821.  She was fully

oriented with a depressed mood and blunted affect.  *Id.*  She had normal memory, attention,

thought processes, insight, judgment, and impulse control.  *Id.* at 822.  Dr. Nasima Ahmed

diagnosed Plaintiff with PTSD and depression and assigned her a GAF score of 50.  *Id.*  Plaintiff

also attended group therapy that day, where she was an active participant.  *Id.* at 824.


### 2.     Dr. Toula Georgiou, Consultative Examiner

On April 26, 2011, Plaintiff attended a psychiatric consultative examination with Dr.

Toula Georgiou ("Dr. Georgiou").  Plaintiff reported that she lived with two (2) of her children,

ages six (6) and sixteen (16), as well as a cousin.  *Id.* at 654.  She had a GED and had also taken

a semester of college.  *Id.*  She could take care of herself and cook.  *Id.* at 656.  She received assistance with cleaning, laundry, and shopping.  *Id.*  She was unable to take public transportation alone due to anxiety, and she drove only when necessary.  *Id.*  She reported having good family relationships, and her hobbies included walking and travel.  *Id.*  She said she spent her time at home in her room.  *Id.*  Plaintiff reported that she had been treated for anxiety in the emergency room in 2010, and that she had difficulty sleeping, a decreased appetite, dysphoric moods, crying spells, loss of interest, social withdrawal, irritability, fatigue, and difficulty concentrating.  *Id.* at 654-55.

During her mental status examination, Plaintiff was cooperative, but withdrawn.  *Id.* at 655.  She exhibited restless motor behavior and appropriate eye contact.  *Id.*  Her thought processes were coherent and adequate.  *Id.*  She displayed an anxious affect and a dysthymic and tearful mood.  *Id.*  She had a clear sensorium and was oriented times three.  *Id.* at 656.  Her attention and concentration were mildly impaired, and she counted forwards and backwards and performed simple calculations, although she did not perform serial three's.  *Id.*  Plaintiff also had mildly impaired memory skills.  *Id.*  She remembered three of three objects immediately and after a few minutes.  *Id.*  She remembered six digits forwards and three digits backwards.  *Id.*  She displayed average cognitive functioning and had fair insight and judgment.  *Id.*

Dr. Georgiou opined that Plaintiff could follow and understand simple directions and instructions, perform some simple tasks independently, and attend and concentrate on simple tasks.  *Id.*  She believed that Plaintiff may have difficulty maintaining a regular schedule, having to perform complex tasks independently, relating to others in a vocational setting, and dealing

with stress due to her psychiatric issues.  *Id.* at 656.  Dr. Georgiou diagnosed Plaintiff with PTSD and depression.  *Id.* at 657.

### 3.        Dr. Evelyn Wolf, Consultative Examiner

On April 26, 2011, Plaintiff attended an internal medicine consultative examination with Dr. Evelyn Wolf ("Dr. Wolf").  *Id.* at 659.  Plaintiff had been hospitalized in the past for congestive heart failure.  *Id.*  She reported that she still felt left-sided chest pain upon exertion and had felt palpitations about a year ago.  *Id.*  Plaintiff also reported a history of asthma, with her last attack occurring back in 2005.  *Id.*  She had a history of a herniated disk and complained of intermittent back pain.  *Id.*  She said that she smoked, but denied alcohol or drug use.  *Id.* at 660.  She helped with housework, watched television, listened to the radio, and read.  *Id.*

On physical examination, Plaintiff had a blood pressure of 110/80.  *Id.*  She appeared in no acute distress and walked with a normal gait.  *Id.*  She walked on her heels and toes, had a normal stance, and did a full squat.  *Id.*  She did not require any help getting on or off the examination table.  *Id.*  Her heart had a regular rhythm with no gallop or rub.  *Id.*  She displayed full motion in her cervical spine.  *Id.* at 661.  Straight leg raising tests were negative on both sides.  *Id.*  Plaintiff also displayed a full range of motion in her shoulders, elbows, and wrists.  *Id.* She had hip flexion and extension to 100 degrees and knee flexion and extension to 150 degrees. *Id.*  Plaintiff had full (5/5) strength in her upper and lower extremities.  *Id.*  She also exhibited intact hand and finger dexterity with full (5/5) grip strength.  *Id.* at 662.

Dr. Wolf diagnosed Plaintiff with a mitral valve prolapse with a history of intermittent palpitations, congestive heart failure, asthma, discogenic back disease, PTSD, and hypertension.

*Id.* Dr. Wolf opined that Plaintiff was not limited in walking, standing, climbing, or sitting, provided that Plaintiff could stretch from time to time. *Id.* Plaintiff was mildly limited for lifting. *Id.*

<u>4.    Dr. Suzanne Krishnamoorthy, D.O.</u>

On March 29, 2012, Plaintiff saw a psychiatrist, Dr. Suzanne Krishnamoorthy, D.O. ("Dr. Krishnamoorthy"). *Id.* at 812. She complained of insomnia and physical pain. *Id.* Dr. Krishnamoorthy noted that although Plaintiff had improved from therapy, Plaintiff still could not relate to others, was suspicious of others, and would violently lash out if provoked. *Id.* at 815. During her mental status examination, Plaintiff was fully oriented with neutral mood and appropriate affect, although she was initially irritable. *Id.* at 817. Her attention and concentration were both normal, as were her memory and thought processes. *Id.* She also displayed fair impulse control, good insight, and good judgment. *Id.* at 818. Dr. Krishnamoorthy diagnosed a mood disorder and PTSD and assigned Plaintiff a GAF score of 50-52. *Id.*

In a questionnaire stamped April 2012, Dr. Krishnamoorthy assessed Plaintiff with a severe limitation in performing work in frequent contact with others and in performing full-time work in a routine work setting. *Id.* at 903. Plaintiff also had moderate to severe restrictions in relating to others and performing complex tasks. *Id.* Plaintiff had moderate restrictions in performing daily activities, repetitive tasks, and varied tasks. *Id.* Plaintiff had mild restrictions in personal habits, comprehending and following instructions, performing work where contact with others would be minimal, and performing simple tasks. *Id.* Dr. Krishnamoorthy reported

15

that she believed Plaintiff had great difficulty relating and dealing with other people, and that she was not suited to be in stressful situations or situations where cooperation with others would be necessary. *Id.* at 904.

### D. The ALJ's Decision

After applying the five (5)-step sequential analysis set forth in C.F.R. § 404.1520, the ALJ found that Plaintiff satisfied the first four steps of the analysis, but failed to meet the fifth criterion of being unable to work in a job in the national economy under Medical-Vocational Rule 202.219. *Id.* at 29-30. As a result, the ALJ determined that Plaintiff was "not disabled" under the Act and thus not eligible for disability insurance benefits. *Id.* at 30.

Specifically, in its May 18, 2012 decision, the ALJ determined that: (1) Plaintiff had not engaged in "substantial gainful activity" since July 1, 2010, the alleged onset date of her disability; (2) Plaintiff had the following "severe" impairments: PTSD and lumbar degenerative disc disease; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the residual functional capacity ("RFC") to "sit and to stand/walk six [6] hours each in an eight [8]-hour workday and lift/carry twenty [20] pounds occasionally, which is light work defined in 20 CFR 404.1567(b)," and that Plaintiff's mental impairments caused nonexertional limitations that limited her to work that allowed "no contact with the general public and only occasional contact with co-workers;" (5) Plaintiff was unable to perform any of her past relevant work as a retail sales associate, truck driver, and maintenance worker; (6) Plaintiff, aged 42, was a younger individual with at least a high school education and English

language skills; and (7) considering Plaintiff's "age, education, work experience, and residual functional capacity, there [were] jobs that exist[ed] in significant numbers in the national economy that the [Plaintiff could have performed under] 20 CFR 404.1569 and 404.1569(a)." *Id.* at 23-29. Accordingly, the ALJ concluded that Plaintiff failed to satisfy the fifth factor of the five (5) step test for determining disability, because the Commissioner had satisfied its burden of showing that Plaintiff was not unable to do any work in the national economy given her RFC, age, education, and prior work experience. *Id.* at 29-30. Plaintiff therefore was "not disabled" under the Act from July 1, 2010 through the date of the ALJ's decision on May 18, 2012. *Id.* at 30.

In reaching his conclusion that Plaintiff was "not disabled" under the Act, the ALJ accorded "limited weight" to Dr. Krishnamoorthy's opinion. *Id.* at 28.

> The opinion of Dr. Krishnamoorthy is only partial[ly] supported by the record of evidence. While the claimant's history includes diagnoses of post-traumatic stress disorder, depressive disorder, [and] mood disorder, clinical signs and symptoms of record are limited. In addition, therapy notes suggest progress and fail to document restrictions or limitations that would preclude all vocational activity. Further, as detailed below, the claimant performs a wide range of activities of daily living, all of which fails to support the opinion of Dr. Krishnamoorthy. Therefore, to the extent that the doctor offers an opinion that would preclude all vocational activity, the [ALJ] accords limited weight to the opinion of Suzanne Krishnamoorthy, D.O.

*Id.* The ALJ, however, accorded "considerable weight" to Dr. Georgiou's opinion, because that medical opinion was "consistent with the examination and the symptoms and treatment received." *Id.* The ALJ similarly accorded "considerable weight" to Dr. Wolf's opinion, because the opinion was "consistent with and supported by the examination and the limited clinical signs and treatment for physical impairments of record." *Id.* at 29.

Having reviewed all the evidence before him, the ALJ held that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [t]he claimant's submissions, and consultative examinations, indicate that the claimant helps get her children ready for school, shops, cleans and cooks uses the public transportation and drives. Further, her hobbies and interests include walking and traveling, all of which fails [sic] to support her allegations of disability and strongly suggest that her PTSD allegations are not nearly as severe as alleged." *Id.* As a result, the ALJ concluded that Plaintiff could engage in "light work," defined as the ability to lift no more than twenty (20) pounds at a time with substantial walking, standing, or sitting for most of the time. *Id.* at 30; 20 C.F.R. § 404.1567(b).[2] Plaintiff therefore was "not disabled" under Sections 216(i) and 223(d) of the Act. Tr. at 30.

## II. DISCUSSION

### A. *Standards of Review*

#### 1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) (defining "light work").

a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

2.      Review of the Commissioner's Decision

Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009)). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted). "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is

required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted).

Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law might have affected the disposition of the case." *Id.* at 189. If so, the Commissioner's decision must be reversed. *Id.*; *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the application of the correct legal standard could lead to only the same conclusion, the error is considered harmless and remand is unnecessary. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

### B.    *Evaluation of Disability*

#### 1.    Statutory Definition of Disability

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are available only

where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

### 2. Five-Step Sequential Analysis of Whether Claimant is Disabled

Pursuant to regulations promulgated under the Social Security Act, the Commissioner is required to apply a five (5) step sequential analysis to determine whether an individual is disabled under the Act. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) and (b). "Substantial work activity" "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). If the claimant is not engaged in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he has a "severe medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner may proceed to the next step only if the claimant's impairment is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Social Security Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant is not found to be disabled at the third step, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity [("RFC")] based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). The RFC considers whether "[the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting."

20 C.F.R. § 404.1545(a).  The RFC is "the most [the claimant] can still do despite [his] limitations."  *Id.*

At the fourth step, the Commissioner compares the claimant's RFC assessment "with the physical and mental demands of [the claimant's] past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv) and (f).  If the claimant can still do his past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot do his or her past relevant work, the Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's] age, education and work experience to see if [the claimant] can make an adjustment to other work."  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work, the claimant is not disabled.  *Id.*  If the claimant cannot make an adjustment to other work, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant bears the burden of proving first four (4) steps of the sequential analysis, and the Commissioner bears the burden at the last step.  *See Talavera*, 697 F.3d at 151.

### C.      *Review of the ALJ's Decision*

The ALJ determined that Plaintiff had the RFC to perform a full range of "light work" under 20 C.F.R. § 404.1567(b).  Tr. at 29-30.  Plaintiff argues that the ALJ erred by: (1) allegedly focusing on Plaintiff's work history after she was discharged from the Army; (2) failing to obtain expert medical testimony on Plaintiff's PTSD diagnosis; (3) according only limited weight to Dr. Krishnamoorthy's opinion; (4) allegedly considering only selective portions of Dr. Georgiou's opinion; and (5) allegedly failing to consider that Plaintiff was

receiving service-related disability for her PTSD from the VA.  [Pl's Mem. of Law in Support of Cross-Mot. for J. on the Pleadings ("Pl.'s Br.") at 8-13].

### 1.    Plaintiff's Work History

Plaintiff claims that the ALJ erred by focusing upon Plaintiff's work history following her discharge from the Army.  Pl.'s Br. at 8.  Plaintiff started experiencing PTSD in 2001, served in the Army from 2000 to 2005, and worked a variety of civilian jobs after her honorable discharge.  Tr. at 58-60.  However, according to Plaintiff's application for disability insurance benefits, she was rendered unable to work because of her alleged disability on July 1, 2010.  *Id.* at 121.  In his decision, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since July 1, 2010, the alleged onset date" of the disability.  *Id.* at 25.  Plaintiff's argument is therefore without merit, as the ALJ specifically held only that Plaintiff had not worked after her onset date.

### 2.    Absence of Expert Medical Testimony on PTSD

Plaintiff contends that the ALJ erred by failing to obtain expert medical testimony on PTSD's effect on Plaintiff's ability to maintain employment.  Pl.'s Br. at 9.  As discussed above, however, Plaintiff represented in her application for benefits that her alleged onset date was July 1, 2010, and the ALJ ruled in his decision that Plaintiff had not been employed since then.  Tr. at 25, 121.  Expert medical testimony on Plaintiff's ability to work after her alleged onset date of disability was therefore unnecessary.

### 3. Dr. Krishnamoorthy's Opinion

Plaintiff also argues that the ALJ erred by according only limited weight to Dr. Krishnamoorthy's opinion and the fact that Plaintiff was assessed a GAF score of 50. Pl.'s Br. at 10. Plaintiff asserts that although "GAF scores cannot prove disability alone, it is an important criteria [sic] that should be taken into consideration." *Id.*

An ALJ need not give controlling weight to a treating physician's medical opinion, however, where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In this case, it appears that Dr. Krishnamoorthy's single medical examination of Plaintiff and the doctor's opinion is restricted to the medical notes and a two (2) page form on which Dr. Krishnamoorthy graded Plaintiff's condition on a scale from "none" to "severe." Tr. at 903-04. Dr. Krishnamoorthy noted that Plaintiff "has great difficulty relating and dealing with other people, especially in large group situations. Her current psychiatric conditions have impaired her to the point where she is *not suited* to be in situations of stress or situations where cooperation with others would be necessary." *Id.* at 904 (emphasis added). At the same time, Dr. Krishnamoorthy opined that Plaintiff would face only a "moderate" degree of restriction in performing her daily activities, such as attending meetings, working around the house, and socializing with friends and neighbors. *Id.* at 903. Furthermore, the record reflects that Plaintiff has consistently been an active participant in group therapy over several months, suggesting an ability to socialize and function around other individuals. *Id.* at 705-06, 713-14, 719-21, 748-49, 756-64, 883-86. Dr. Georgiou similarly noted that Plaintiff reported that she had been attending weekly group therapy sessions, but added that Plaintiff

might have difficulty relating to others in a vocational setting. *Id.* at 28. Dr. Krishnamoorthy's opinion is therefore not entirely consistent with her own statements elsewhere on the form, Plaintiff's personal behavior in group therapy, or Dr. Georgiou's opinion.

As the ALJ thus correctly concluded, "[t]he opinion of Dr. Krishnamoorthy is only partial[ly] supported by the record of evidence. While the claimant's history includes diagnoses of post-traumatic stress disorder, depressive disorder, [and] mood disorder, clinical signs and symptoms of record are limited." *Id.* at 28. Moreover, "therapy notes suggest progress and fail to document restrictions or limitations that would preclude *all* vocational activity. . . . [T]he claimant performs a wide range of activities of daily living, all of which fails to support the opinion of Dr. Krishnamoorthy." *Id.* (emphasis added). As a result, the ALJ properly decided that "to the extent that the doctor offers an opinion that would preclude *all* vocational activity, the [ALJ] accords limited weight to the opinion of Suzanne Krishnamoorthy, D.O." *Id.* (emphasis added).

The ALJ also was not required to accord significant, if any, weight to Plaintiff's GAF score. Under the Social Security Administration's Rules and Regulations, the Administration "did not mention the GAF score to endorse its use in the Social Security and SSI disability programs . . . . The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." Rules and Regulations, Social Security Administration, 20 C.F.R. Parts 404 and 416, *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746-01, 2000 WL 1173632 (F.R.) (Aug. 21, 2000). The ALJ was thus not obligated to consider Plaintiff's GAF score in his decision, and

to the extent that he did consider the GAF score in assessing Plaintiff's condition, he was not required to extrapolate Plaintiff's GAF score of 50 (equivalent to having "severe" symptoms or difficulty functioning by the American Psychiatric Association) to an identical level of disability in his own determinations.

### 4. Dr. Georgiou's Opinion

Plaintiff further contends that the ALJ erred by considering only selective portions of Dr. Georgiou's medical opinion. Pl.'s Br. at 11-12. Plaintiff's contention is incorrect. The ALJ determined that Dr. Georgiou's opinion was "consistent with the examination and the symptoms and treatment received" and thus accorded "considerable weight" to Dr. Georgiou's opinion. Tr. at 28. The alleged error, according to Plaintiff, is that the ALJ failed to mention certain aspects of Dr. Georgiou's opinion in the ALJ decision. Pl.'s Br. at 12 ("While the ALJ acknowledged Dr. Georgiou's findings, he failed to mention that Dr. Georgiou felt that the Plaintiff had psychiatric issues which would significantly interfere with her ability to function daily."). The ALJ, however, is not required to detail a comprehensive and exhaustive list of every element of a physician's opinion upon which he relies. The ALJ stated his basis for according "considerable weight" to Dr. Georgiou's opinion, and Plaintiff's contention that the ALJ needed to go even further so as to explain every element of Dr. Georgiou's opinion upon which the ALJ relied is not the legal standard and holds no merit.

<u>**5.**</u>     <u>Plaintiff's Service-Related Disability by the VA</u>

Plaintiff also argues that the ALJ committed legal error by allegedly failing to consider that the VA had already assessed Plaintiff with a seventy percent (70%) service-related disability.[3]  Pl.'s Br. at 13.  The VA, however, uses a different scale from that of the Commissioner to determine whether an individual should be deemed disabled.  *See* 38 C.F.R. § 4.1.

According to the VA, a disability is that which "result[s] from all types of diseases and injuries encountered as a result of or incident to military service.  The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations."  38 C.F.R. § 4.1.  By contrast, the Commissioner defines a disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The VA's and Commissioner's respective definitions of a disability are neither comparable nor equivalent.

Alternatively, the VA's assessment is not determinative of whether Plaintiff is entitled to social security disability benefits.  The Social Security Administration's Rules and Regulations provide that "the final responsibility for deciding issues such as [where an individual is

---

[3] Although Plaintiff's brief states that she is receiving seventy percent (70%) service-related disability from the VA, she stated in her testimony before the ALJ that she was receiving eighty percent (80%) disability from the VA.  Pl.'s Br. at 13; Tr. at 67.  The discrepancy is immaterial as the issue is whether the ALJ needed to consider the VA's determination that Plaintiff had a service-related disability, and not the exact degree of that disability.

'disabled' under the Act] is reserved to the Commissioner."  SSR 96-5P, *Titles II and XVI: Medical Source Opinions on Issues Reserved to the Comm'r*, 1996 WL 374183, at *2 (July 2, 1996).  As a result, not only was the ALJ not required to adopt the VA's assessment of Plaintiff's service-related disability in his decision, but he was also required to uphold the Commissioner's "final responsibility" of independently determining Plaintiff's disability under the Act.

## III.      CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted, and Plaintiff's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is denied.  The Commissioner's decision denying social security disability benefits to Plaintiff is affirmed.

**SO ORDERED**.

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: September 30, 2015
          Central Islip, New York